# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

Connie Marziale,

      Plaintiff,

    v.                                Case No. 1:05cv741

BP Products North America, Inc.,          Judge Michael R. Barrett

      Defendant.


## OPINION & ORDER

This matter is before the Court upon Defendant BP Products North America, Inc.'s ("BP") Motion for Summary Judgment. (Doc. 39) Plaintiff Connie Marziale has filed a Response in Opposition (Doc. 42), and BP filed a Reply (Doc. 48). This Court then granted Marziale leave to file a Sur-reply (Doc. 52). Also before the Court is BP's Motion to Strike Portions of Affidavit of Deborah Sarver and Declaration of John Menke (Doc. 47), to which Marziale has filed a Response in Opposition (Doc. 49). This matter is now ripe for review.

## I. BACKGROUND

Plaintiff Marziale began working as a store manager for Defendant BP in 1984. There is no dispute that she was a hardworking employee and a good manager. (Doc. 33, John Voll Depo. at 10, 14)

In the Fall of 2002, Marziale was diagnosed with a degenerative spine condition. (Doc. 31, Connie Marziale Depo. at 29-30) In March of 2003, Marziale underwent surgery on her back. (Id. at 25) On July 24, 2003, Marziale was released to return to work. (Id. at 34) Initially, Marziale was limited by her physician from working more than four hours

per day, six days per week, and lifting no more than twelve pounds. (Id. at 34) In September of 2004, her restrictions were raised to thirty-two work hours per week, and no lifting more than twelve to fifteen pounds. (Id. at 27, 47; Doc. 44, Dr. Nancy K. McDonough Aff. ¶ 12) There is no dispute that after her return, Marziale was able to successfully manage her store with her restrictions.

In September of 2004, BP began to implement a new retail operations program called "Accelerator." (Doc. 38, Kimberly Loutzenhiser Depo. at 50) The Accelerator program had several effects on the way store managers performed their jobs, including requiring a minimum of four hours per day of "customer facing time" at the cash register during peak times in the morning and at noon. (Doc. 37, Arnaldo Soto-Cuevas Depo. at 51) The program also required what time of day and by what process certain tasks had to be performed. (Doc. 32, Roberta Graham Depo. at 32) Based on these requirements, BP maintains that the store manager's job cannot be performed in less than forty-eight hours. (Soto-Cuevas Depo. at 40-41) BP has submitted a job description for the position of Store Manager which states that the position requires the manager to be on call twenty-four hours, and the normal work week is forty-eight hours. (Doc. 39, Ex. A)[1] The job description also includes a lifting requirement of up to twenty-five pounds. (Id.)

At the same time that the Accelerator program was being implemented, Marziale's supervising Company Account Executive ("CAE") changed from Heidi Huff to Arnaldo Soto-Cuevas. Huff had previously observed Marziale falling asleep during a meeting. (Doc. 42,

---

[1]BP has also provided a "Job Profile" for the position of Site Manager. It is not clear what the relationship this document has with the job description. The Job Profile includes the requirement that the manager be on call for twenty-four hours, but does not state that the typical work week is forty-eight hours.

Ex. 1)  In an email dated June 21, 2004, Huff relayed the details of this incident and her subsequent conversation with Marziale regarding the effects of her pain medication. (Id.) Huff expressed concerns about safety and stated that Marziale "probably does not need to be working." (Id.)  This email began a series of emails between Huff, company nurses, and John Voll, from BP's Human Resource Department, discussing the extent to which Marziale's job required her to drive.  (Id.)  Soto-Cuevas was later included in the email discussion.  (Id.)  Voll concluded that driving was a requirement, and acknowledging Marziale did not have a driving restriction from her physician, asked the group if "we can have an influence in getting one?" or "institute o[u]r own?"  (Id.)  At the end of August, Laura East, a nurse working for BP, asked Marziale to provide an updated medical release to her physician during her next appointment on September 15, 2004 so that BP's medical director could speak to her doctor about these concerns.  (Doc. 33, John Voll Depo., Ex. 19)  Marziale did not follow-up on this request.  (Doc. 44, Marziale Aff. ¶ 10)

Soto-Cuevas determined that Marziale would not be able to perform her job as store manager under the new Accelerator program within a thirty-two hour week.  (Soto-Cuevas Depo at 30-33)  Soto-Cuevas consulted with Voll, and decided to place Marziale on short-term disability.  (Voll Depo. at 16, 20, 24)

On September 20, 2004, Marziale's short-term disability leave began.  (Soto-Cuevas Depo. at 33)  Voll claims that during this period of time, he performed searches on BP's electronic job posting system for available jobs which Marziale could perform with her restrictions.  (Voll Depo. at 22-23)  Voll limited his searches to the Cincinnati market because it was his understanding that Marziale did not want to move.  (Id. at 21)  Voll did not find any open positions.  (Id.)  Marziale disputes whether Voll ever performed such

searches, and states that she was never asked about relocating outside the Cincinnati area. (Marziale Aff. ¶ 19) However, there appears to be no dispute that Marziale was never contacted regarding alternative job positions. (Loutzenheiser Depo. at 69)

On October 15, 2005, BP terminated Marziale's employment.

Marziale currently works as an assistant manager at a competing convenience store chain. (Marziale Depo. at 47-49) Marziale works between thirty-two and thirty-four hours per week. (Id. at 46, 58)

In her Complaint, Marziale brings claims of discrimination under the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*; disability discrimination under Ohio Revised Code §§ 4112.02 and 4112.99; and disability discrimination in violation of Ohio public policy. (Doc. 1)

## II. ANALYSIS

### A. Motion to Strike

BP moves to strike portions of the affidavit of Deborah Sarver and the declaration of John Menke because they contain statements that are not fact supported by personal knowledge. Specifically, BP argues that the statements include hearsay evidence and opinions without basis.

Federal Rule of Civil Procedure 56(e) requires that affidavits submitted in support of a motion for summary judgment "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated in the affidavit."

The Court finds that the statements by Sarver to which BP objects are not hearsay or inadmissible opinion evidence, but are based upon her personal knowledge. Sarver

explains that she was a manager for BP for fourteen years.  (Deborah Sarver Aff. ¶ 2)
Sarver states that she worked under the Accelerator program for about one year before she
was terminated.  (Id. at ¶ 5)  Sarver's statements are based upon her own experience as
a manager, her observations while visiting other stores, and information she learned during
regularly scheduled meetings.  (Id. at ¶ 6)

Similarly, the Court finds that the statements by Menke are admissible.  Menke
explains that he worked for BP for over three years, and worked as a manager under the
Accelerator program for approximately one year.  (John Menke Aff. ¶¶ 2, 4)  Menke states
that he frequently went to a store managed by Josh Taylor and also managed the same
store on a temporary basis.  (Id. at ¶ 7)  Menke explains that based on his observations,
he estimated that Taylor worked less than forty hours per week, and delegated some of his
assigned tasks to his assistant manager.  (Id.)  The Court finds that it can properly consider
these statements under Rule 56(e).

Accordingly, BP's Motion to Strike is hereby DENIED.

### B.    Motion for Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to
interrogatories, and admissions on file, together with the affidavits, if any, show that there
is no genuine issue as to any material fact and that the moving party is entitled to a
judgment as a matter of law."  Fed.R.Civ.P. 56(c).  The moving party has the burden of
showing an absence of evidence to support the non-moving party's case.  *Celotex Corp.
v. Catrett*, 477 U.S. 317, 325 (1986).  Once the moving party has met its burden of
production, the non-moving party cannot rest on his pleadings, but must present significant
probative evidence in support of his complaint to defeat the motion for summary judgment.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).  The mere existence of a scintilla of evidence to support the non-moving party's position will be insufficient; the evidence must be sufficient for a jury to reasonably find in favor of the non-moving party. *Id.* at 252.

   **C.   ADA**

   The Americans with Disabilities Act proscribes discrimination based on disability "against a qualified individual with a disability."  42 U.S.C. § 12112(a). "Discrimination" under the ADA includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability."  42 U.S.C. § 12112(b)(5)(A).   The Act defines a "reasonable accommodation" as including "job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities." 42 U.S.C. § 12111(9)(B).

   Marziale claims that BP discriminated against her by failing to accommodate her disability.  As the Sixth Circuit has recently instructed, "claims premised upon an employer's failure to offer a reasonable accommodation necessarily involve direct evidence (the failure to accommodate) of discrimination.*" Kleiber v. Honda of America Mfg., Inc.*, 485 F.3d 862, 868 (6th Cir. 2007).  "In discrimination cases, direct evidence is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions."  *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 1999); *see also Johnson v. Kroger Co.*, 319 F.3d 858,

865 (6th Cir. 2003) (explaining that direct evidence of discrimination does not require factfinder to draw any inferences in order to conclude that challenged employment action was motivated at least in part by prejudice against members of the protected group).

> Under the applicable framework:
>
> (1) The plaintiff bears the burden of establishing that he or she is disabled. (2) The plaintiff bears the burden of establishing that he or she is "otherwise qualified" for the position despite his or her disability: (a) without accommodation from the employer; (b) with an alleged "essential" job requirement eliminated; or (c) with a proposed reasonable accommodation. (3) The employer will bear the burden of proving that a challenged job criterion is essential, and therefore a business necessity, or that a proposed accommodation will impose an undue hardship upon the employer.

*Kleiber*, 485 F.3d at 869, *quoting Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 452 (6th Cir.), *cert. denied*, 543 U.S. 817 (2004).

### 1. **Disability**

The ADA defines a "disability" as:

> (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;
>
> (B) a record of such an impairment; or
>
> (C) being regarded as having such an impairment.

42 U.S.C. § 12102(2). There is no dispute that Marziale's back condition qualifies as a physical impairment under the ADA. However, the Parties disagree as to whether her back condition substantially limits one or more major life activities.

Marziale claims that she is substantially limited in the following major life activities: (1) lifting; (2) performing manual tasks; (3) climbing stairs; (4) walking; (5) sleeping; and (6) sexual activities. BP does not dispute that these are major life activities, but instead disputes the extent to which Marziale is limited in these activities.

Under the ADA, "substantially limits" means:

(1) unable to perform a major life activity that the average person in the general population can perform; or (2) significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner or duration under which the average person in the general population can perform that same major life activity.

29 C.F.R. § 1630.2(j)(1); *see also Penny v. United Parcel Serv.*, 128 F.3d 408, 414 (6th Cir. 1997). To determine whether the degree of limitation experienced by the plaintiff is substantial, "courts should consider the nature and severity of the impairment; the duration or expected duration of the impairment; and the permanent or long term impact, or expected permanent or long term impact, of the impairment." *Penny*, 128 F.3d at 414, *citing* 29 C.F.R. § 1630.2(j)(2). An impairment that only moderately or intermittently prevents an individual from performing major life activities is not a substantial limitation under the ADA. *Mahon v. Crowell*, 295 F.3d 585 (6th Cir. 2002). Courts must also consider the impact of a limitation in the light of any remedial measures that may reduce the effect of the plaintiff's impairment. *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 482 (1999) ("[I]f a person is taking measures to correct for, or mitigate, a physical or mental impairment, the effects of those measures-both positive and negative-must be taken into account when judging whether that person is 'substantially limited' in a major life activity . . .."). The Court will analyze whether Marziale is substantially limited in each claimed major life activity.

### a. *Lifting*

The Sixth Circuit has stated that the list of major life activities "arguably could include lifting." *Henderson v. Ardco, Inc.*, 247 F.3d 645, 650 (6th Cir. 2001). Yet, the Sixth Circuit

has primarily addressed lifting restrictions as a component of a claim of limitations in the major life activity of working. *Id.* at 650-54. Out of these decisions has developed the general rule that "a weight restriction alone is not considered a disability under the ADA." *Olds v. United Parcel Serv., Inc.*, 2005 WL 742804 *3 (6th Cir. April 1, 2005) (unpublished). In addition, the Sixth Circuit has made it clear that the limitation on lifting must be permanent. *Plant v. Morton Int'l, Inc.*, 212 F.3d 929, 937-38 (6th Cir. 2000); *Linser v. Ohio Dept. of Mental Health*, 2000 WL 1529809 at *3 (6th Cir. Oct. 6, 2000) (unpublished).

The record shows that prior to being placed on leave, Marziale's physician limited her to lifting no more than fifteen pounds. This limitation is permanent because it aggravates her degenerative back condition. (McDonough Aff. ¶ 13) The lifting restrictions placed on her by her physician apply to both her employment and her personal life. (Id. ¶ 15) Marziale states that she is unable to lift items such as bags of potatoes or ice. (Marziale Aff. ¶ 3) Marziale explains that she cannot put groceries in her car, put a heavy casserole in the oven, lift trash containers, or lift laundry. (Id.; Marziale Depo. at 86) There is no evidence that the limitations on these activities is intermittent or is capable of being mitigated. Based upon this uncontroverted evidence, the Court finds that Marziale has shown that she is limited in the major life activity of lifting.

**b.** ***Performing manual tasks***

Marziale also claims that she is limited in the major life activity of performing manual tasks. The Supreme Court has held "that to be substantially limited in performing manual tasks, an individual must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives." *Toyota Motor Mfg., Kentucky, Inc. v. Williams*, 534 U.S. 184, 198 (2002). The Court

explained that "household chores, bathing, and brushing one's teeth are among the types of manual tasks of central importance to people's daily lives, and should [be] part of the assessment of whether [a plaintiff is] substantially limited in performing manual tasks." *Id.* at 201.  The Court also explained that the impairment's impact must be permanent or long term.  *Id.*, *citing* 29 CFR §§ 1630.2(j)(2)(ii)-(iii) (2001).

Marziale states that she is permanently restricted from performing household chores such as vacuuming and mopping.  (Marziale Depo. at 101-102)  Marziale states that she cannot pull the vacuum cleaner toward her without pain, move furniture to vacuum, or bend over to vacuum under furniture.  (Marziale Aff. ¶ 4)  Marziale explains that she must get down on her hands and knees to clean the floor.  (Id.)  Marziale states that she cannot wash her own car.  (Id.)  Marziale also states that she is restricted in her ability to cook and wash dishes because bending over the sink causes her pain which she describes as "an electric shock" going up her back.  (Id.)  BP does not dispute these limitations, but argues that Marziale's ability to do housework as she would like is not a substantial limitation on a major life activity.  However, the question of whether an individual is disabled under the ADA is an "individualized inquiry," and a restriction or condition that may render one individual disabled may not render another disabled.  *See Sutton*, 527 U.S. at 483.  The Court finds that based on the statements by Marziale regarding the limitations that she has in performing housework, Marziale has adequately shown that she is substantially limited in the major life activity of performing manual tasks.

### c.    *Walking*

The Sixth Circuit considers walking to be a major life activity.  *See Penny*, 128 F.3d at 415.  While few courts have defined what it means to be substantially limited in the major

life activity of walking, the Sixth Circuit has stated that "moderate difficulty or pain experienced while walking does not rise to the level of a disability." *Id.*

Marziale states that she is limited in how fast she can walk. (Marziale Aff. ¶ 6) Marziale explains that she can only walk a few minutes at a time without severe aching in her back. (Id.) Marziale states that she walks with a limp, and stoops over to limit her pain. (Id.) Marziale explains that she cannot shop at a shopping center because of the amount of walking required, and she when she shops at a grocery store, she leans on her cart like a crutch. (Id.)

The Court finds that this evidence is insufficient to support Marziale's claim that she is substantially limited in the major life activity of walking. While it is undisputed that Marziale experiences pain from walking, the pain is not so great that it prevents her from walking, or forces her to use a device such as a cane or wheelchair. Therefore, Marziale is not disabled based on her limitations in walking.

### d. *Stair climbing*

The Sixth Circuit has not decided whether stair climbing is a major life activity. However, other circuits have decided that it is not. *Robinson v. Global Marine Drilling Co.*, 101 F.3d 35, 37 (5th Cir. 1996) (stair climbing does not qualify as a major life activity); *Weber v. Strippit, Inc.*, 186 F.3d 907, 914 (8th Cir. 1999) (walking up stairs is not a major life activity). The Court concludes that if the Sixth Circuit were to consider stair climbing to be a major life activity, as with walking, moderate difficulty or pain in stair climbing would not rise to the level of a disability.

Marziale states that she is limited in climbing stairs because she has difficulty in raising her leg, and she often trips. (Marziale Aff. ¶ 5) Marziale describes her home as

being bi-level, with seven stairs between the first level, and five between the lower level. (Id.)  Marziale explains that she often uses her hands to crawl up these stairs.  (Id.) Marziale states that when she is in public, she uses a stair railing and climbs very slowly. (Id.)

The Court finds that the described limitations in climbing stairs do not rise to the level of a disability.  While Marziale clearly has difficulty in climbing stairs, her difficulty is only moderate.  Marziale is not forced to crawl up all stairs, and can climb stairs if she does so slowly with the use of a handrail.  Therefore, Marziale is not substantially limited in climbing stairs.

### e.  *Sleeping*

The Sixth Circuit has treated sleeping as a major life activity.  *See e.g.*, *Swanson v. Univ. of Cincinnati*, 268 F.3d 307, 314-15 (6th Cir. 2001).  However, the Sixth Circuit has stated that "[g]etting between two and four hours of sleep a night, while inconvenient, simply lacks the kind of severity we require of an ailment before we will say that the ailment qualifies as a substantial limitation under the ADA."  *Boerst v. General Mills Operations, Inc.*, 2002 WL 59637, *4 (6th Cir. Jan. 15, 2002) (unpublished); *see also Swanson*, 268 F.3d at 316 ("While less than five hours sleep is not optimal, it is not significantly restricted in comparison to the average person in the general population.").

Marziale states that she has difficulty in getting to sleep and remaining asleep. (Marziale Aff. ¶ 7)  Marziale's physician explains that these problems are long term because they are caused by her back condition.  (McDonough Aff. ¶ 16)  Marziale has tried a variety of medications to help her sleep.  (Marziale Aff. ¶ 7)  However, Marziale explains that even with these medications, it takes her twenty minutes to fall asleep, and then she

awakens again within twenty minutes to an hour. (Id.) Marziale states that she averages two to three hours of sleep per night. (Id.) Marziale states that her sleep problems are consistent. (Id.)

The Court finds that Marziale has presented sufficient evidence to show that she is substantially limited in the major life activity of sleeping. The Court notes that the *Boerst* decision, cited above, is unpublished, and under the facts of *Boerst*, the plaintiff's sleep problems had improved with medication. 2002 WL 59637, at *2. In addition, in the unpublished case the court relied upon in the *Boerst* decision, *Linser v. State of Ohio, Department of Mental Health*, 2000 WL 1529809, *3 (6th Cir. Oct. 6, 2000), the plaintiff also was able to curb her sleeping problem with medication, and her sleep was disrupted infrequently. Similarly in *Swanson*, cited above, the court noted that when the plaintiff was taking his medication, the quality of his sleep improved. 268 F.3d at 316; *see also Pack v. Kmart Corp.*, 166 F.3d 1300, 1306 (10th Cir. 1999) (plaintiff not substantially limited in major life activity of sleeping where there was no evidence that her sleep problems were severe, long term, or had a permanent impact).

In contrast, Marziale's sleep problems remain despite her medication. Marziale states that she only gets two to three hours of sleep each night, with the assistance of medication. The Supreme Court has explained that "one has a disability . . . if, notwithstanding the use of a corrective device, that individual is substantially limited in a major life activity." *Sutton*, 527 U.S. at 488. As an example, the Court stated "individuals who take medicine to lessen the symptoms of an impairment so that they can function but nevertheless remain substantially limited" qualify as disabled." *Id.* Accordingly, this Court concludes that Marziale has sufficiently shown that she is substantially limited in the major

life activity of sleeping.

     **f.**     ***Sexual activities***

The Sixth Circuit has not yet found that engaging in sexual activities is a major life activity. *See Hayes v. United Parcel Service, Inc.*, 2001 WL 1006162, *2 (6th Cir. Aug. 20, 2001) (unpublished) (noting that sexual relations has been defined by some courts as a major life activity for purposes of the ADA, but finding it unnecessary to resolve the question). The Supreme Court has ruled that sexual reproduction is a major life activity. *Bragdon v. Abbott*, 524 U.S. 624, 638-39 (1998). From this, other courts have inferred that "engaging in sexual relations, just like procreation, is a major life activity." *McAlindin v. County of San Diego*, 192 F.3d 1226, 1234 (9th Cir. 1999), *cert. denied*, 530 U.S. 1243 (2000). In analyzing whether the plaintiff has a substantial limitation in engaging in sexual relations, courts have required more than the plaintiff's own conclusory assertion of reduced ability to engage in intercourse. *See, e.g.*, *Squibb v. Memorial Medical Center*, 497 F.3d 775, 785 (7th Cir. 2007).

Marziale states that the medication she takes for pain reduces her sex drive, and that there is pain during any sexual relations. (Marziale Aff. ¶ 9) Other than her own statements, Marziale has not provided any evidence supporting her limitations in engaging in sexual activities. Therefore, the Court concludes that even if engaging in sexual relations is a major life activity, Marziale has not presented sufficient evidence that she is substantially limited in taking part in this activity.

     **2.**     <u>**Regarded as disabled**</u>

Marziale argues in the alternative that BP regarded her as being disabled. In order to meet the "regarded as having such an impairment" definition of disabled, a plaintiff must

show "1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or 2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities." *Sutton*, 527 U.S. at 489. "In both cases, it is necessary that a covered entity entertain misperceptions about the individual-it must believe either that one has a substantially limiting impairment that one does not have or that one has a substantially limiting impairment when, in fact, the impairment is not so limiting." *Id.* These misperceptions often "resul[t] from stereotypic assumptions not truly indicative of . . . individual ability." *Id.*, *quoting* 42 U.S.C. § 12101(7).

In support of her argument that BP regarded her as being disabled, Marziale points to the email exchange between Huff and others regarding the side effects of her pain medication, as well as the subsequent decision to place her on disability leave.

The Sixth Circuit has explained that an employer's perception that health problems are adversely affecting an employee's job performance is not tantamount to regarding that employee as disabled. *Sullivan v. River Valley School Dist.*, 197 F.3d 804, 810-11 (6th Cir. 1999), *cert. denied*, 530 U.S. 1262 (2000). The Sixth Circuit has also explained that a request that an employee obtain a medical exam "cannot itself prove perception of a disability because it does not prove that the employer perceives the employee to have an impairment that substantially limits one or more of the employee's major life activities." *Id.* at 811. In addition, an offer of a paid medical leave of absence does not show that an employee was regarded as disabled. *Kocsis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876, 885 (6th Cir. 1996). Therefore, the Court finds that there is nothing about the email conversation between Huff and the others, the subsequent request for additional medical

information from Marziale and her physician, or placing Marziale on leave which supports Marziale's claim that BP regarded her as disabled.

### 3.  <u>Qualified</u>

Marziale argues that a forty-eight hour week and the twenty-five pound lifting requirement are not essential requirements of the job of manager.

A job function is essential if its removal would "fundamentally alter" the position. *Kiphart v. Saturn Corp.*, 251 F.3d 573, 584 (6th Cir. 2001), *quoting* 29 C.F.R. § 1630.2(n) app. at 356.  To determine whether a particular function is "essential" courts consider the following list of non-exhaustive factors:

(i) The employer's judgment as to which functions are essential;

(ii) Written job descriptions prepared before advertising or interviewing applicants for the job;

(iii) The amount of time spent on the job performing the function;

(iv) The consequences of not requiring the incumbent to perform the function;

(v) The terms of a collective bargaining agreement;

(vi) The work experience of past incumbents in the job; and/or

(vii) The current work experience of incumbents in similar jobs.

*Hoskins v. Oakland County Sheriff's Dept.*, 227 F.3d 719, 726 (6th Cir. 2000), *quoting* 29 C.F.R. § 1630.2(n)(3).

BP maintains that a forty-eight hour week is essential for the job of manager because certain tasks the manager must perform under the Accelerator program must be performed at certain times during the day.  As Soto-Cuevas has explained:

 . . . For example, the manager was required to be on the register during two

hours in the morning, two hours at noon, those two peak times, no exception to that rule; that was one of those regimental tasks that must take place at the facility.  That, by itself was four hours of the day, not counting the couple of hours it would take her to receive inventory at her facility, in addition to being on call 24/7.

(Soto-Cuevas Depo. at 40-41)  The job description for the position of store manager states that the normal work week is forty-eight hours.  (Doc. 39, Ex. A)  The job description also states that the manager must have the "[a]bility to lift and carry cases of merchandise such as motor oil, soft drinks, beer, ice bags and groceries, etc. (up to an approximate weight of 25 pounds)."  (Id.)

However, BP has not provided any explanation regarding the consequences of not requiring the manager to perform some of the tasks which result in the forty-eight hour work week or tasks which require lifting up to twenty-five pounds.  Marziale explains that it was her understanding that even before the implementation of the Accelerator program, the manager position required a forty-eight hour work week.  (Marziale Aff. ¶ 13)  Marziale explains further that before she was placed on leave, she was able to successfully run her store in fewer hours.  (Id. at ¶ 12)  Marziale also explains that she performs her current position as an assistant manager in twenty-eight to thirty-two hours per week.  (Id. at ¶ 11)  Marziale states that this position is similar to the manager position at BP.  (Id.)  However, Marziale admits that during the weeks she has substituted for her manager, she worked from forty-four to forty-six hours per week.  (Id.)

The evidence submitted by the Parties shows that the number of hours a manager works each week varies by week and location.  BP has presented evidence that shows that since the implementation of the Accelerator program, the store manager of Marziale's former store regularly works an average of forty-five hours per week, but some weeks she

is at the site more than sixty hours. (Doc. 39, Ex. 2, Katherine Knoche Aff. ¶¶ 3, 4) The manager also states that she is frequently the only employee in the store, and she must lift crates of soda and cases of motor oil which weigh up to twenty-five pounds. (Id. at ¶¶ 8, 11) Marziale has presented evidence that one store manager works less than forty hours per week because the store is small, and the assistant manager often runs that cash register and performs some of the manager's paperwork. (Menke Aff. ¶ 7) Marziale has also presented evidence of a store manager who delegated stocking and merchandising items such as pop, motor oil, and mulch. (Sarver Aff. ¶ 14)

While there is evidence which shows that on occasion managers work forty-eight hours per week or more, this does not mean that working forty-eight hours is "essential." *Accord Brumbalough v. Camelot Care Centers, Inc.*, 427 F.3d 996, 1006 (6th Cir. 2005) (noting that although the plaintiff admitted that she had previously worked sometimes fifty to sixty hours a week, such admission is not proof that working these types of hours is "essential" to the job). The Court finds the same rationale is applicable to the lifting requirement.

Based on the foregoing, the Court finds that there are genuine issues of material fact as to whether the forty-eight hour week and the twenty-five pound lifting requirement are essential requirements of the job of manager. In addition, once a determination has been made regarding the essential functions of the job, there is still a question as to whether Marziale could perform these functions with or without a reasonable accommodation.

### 4. **Reasonable accommodation**

Marziale argues that BP failed to reasonably accommodate her by reassigning her

to an alternate position.

An employer has a duty under the ADA to consider transferring a disabled employee who can no longer perform his or her old job even with accommodation to a new position within the company for which that employee is otherwise qualified. *Burns v. Coca-Cola Enterprises, Inc.*, 222 F.3d 247, 257 (6th Cir. 2000). However, "to overcome summary judgment, the plaintiff generally must identify the specific job he [or she] seeks and demonstrate that he is qualified for the position." *Kleiber*, 485 F.3d at 870.

Marziale claims that she could perform the position of assistant manager at BP. Kimberly Loutzenhiser, Operations Manager at the time Marziale was terminated, has admitted that assistant manager positions were available, but were not considered for Marziale. (Loutzenhiser Depo. at 69) The Court notes that while Marziale may still need an accommodation of reduced hours or lifting requirement in the assistant manager position, "the ADA countenances such a request for 'an accommodation within an accommodation.'" *Kleiber*, 485 F.3d at 870, n.3. Certainly the fact that Marziale is currently performing the job of assistant manager at one of BP's competitors creates a genuine issue of material fact as to whether Marziale was qualified for this position with or without a reasonable accommodation.

Marziale has also presented evidence that the job of compliance consultant became open in the Spring of 2005. (Sarver Decl. ¶ 12) Marziale explains that this job was never discussed with her, and she would have no way of knowing such a job was available because after she was placed on leave, she did not have access to BP's intranet, where jobs were posted. (Marziale Aff. ¶ 16) There is evidence that Marziale's experience as a manager would make her qualified for such a position, which involves performing audits of

stores. (Graham Depo. at 44-45) The Court again finds that there is a genuine issue of material fact as to whether Marziale was qualified for this position.

### 5. Interactive process

Even though the interactive process is not described in the ADA's text, the interactive process is mandatory, and both parties have a duty to participate in good faith. *Kleiber*, 485 F.3d at 871. "When a party obstructs the process or otherwise fails to participate in good faith, 'courts should attempt to isolate the cause of the breakdown and then assign responsibility.'" *Id.*, *quoting Bultemeyer v. Fort Wayne Community Schools*, 100 F.3d 1281, 1285 (7th Cir. 1996). BP and Marziale both accuse one another of failing to engage in the interactive process in good faith. Based on the record before it, the Court concludes that there is a genuine issue of material fact as to the cause of the breakdown in the interactive process.

In summary, because genuine issues of material fact remain regarding Marziale's claim under the ADA that BP failed to accommodate her disability, BP is not entitled to summary judgment.

### D. Ohio law claims

Given the similarity of the language used in the ADA and Chapter 4112, the Ohio Supreme Court has held that federal regulations and case law are applicable to disability discrimination claims brought under Chapter 4112. *Columbus Civil Serv. Comm. v. McGlone*, 697 N.E.2d 204, 206-207 (1998). Based on the analysis of Marziale's claim under the ADA, the Court concludes that BP is not entitled to summary judgment on

Marziale's disability discrimination claims under Ohio law.[2]

## III.  <u>CONCLUSION</u>

Based on the foregoing, it is hereby **ORDERED** that:

1.  Defendant's Motion to Strike Portions of Affidavit of Deborah Sarver and Declaration of John Menke (Doc. 47) is **DENIED**; and

2.  Defendant's Motion for Summary Judgment (Doc. 39) is **DENIED**.

**IT IS SO ORDERED.**

    *S/Michael R. Barrett*    
Michael R. Barrett, Judge
United States District Court

---

[2]Neither Party has addressed Marziale's public policy claim in their briefs, and therefore the Court will not do so here.